UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
MADISON DIVISION

JASMINE PENNINGTON, VINCENT RAINES, )
CONNOR MCCLUSKEY AND JANEACE )
MCCLUSKEY, individually and on behalf of )
others similarly situated, )
)
) Case No.: 3:20-cv-1002
)
Plaintiffs, )
)
v. )
)
AMERICAN FAMILY MUTUAL INSURANCE ) **JURY TRIAL DEMANDED**
COMPANY, S.I. and AMERICAN FAMILY )
INSURANCE COMPANY )
)
)
)
)
Defendants. )

## **COMPLAINT**

COME NOW Plaintiffs, Jasmine Pennington, Vincent Raines, Connor McCluskey and Janeace McCluskey, individually and on behalf of others similarly situated, and for their Complaint against American Family Mutual Insurance Company, S.I. ("AFMICSI") and American Family Insurance Company ("AFIC"), state and allege the following:

### **PARTIES, RESIDENCY, JURISDICTION AND VENUE**

1.   Plaintiffs Jasmine Pennington, Vincent Raines Pennington, Connor McCluskey, and Janeace McCluskey are Ohio residents. The McCluskeys are married.

2.   Defendants AFMICSI and AFIC are affiliated insurance companies organized under the laws of the State of Wisconsin and headquartered in Dane County at 6000 American Parkway, Madison, Wisconsin.

3. Defendants offer property insurance in several states, specifically including Arizona, Illinois, Ohio, South Carolina, Utah, Virginia and Wisconsin.

4. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring contractual and declaratory relief claims on behalf of themselves and a putative class of Defendants' property insurance policyholders who are similarly situated.

5. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(d)(2). There are more than 100 members in the proposed class, at least one member of the proposed class has state citizenship that is different than each of the Defendants, the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and more than one-third of the members of the proposed class reside outside of Wisconsin.

6. This Court has personal jurisdiction over Defendant as Defendant is headquartered and domiciled in Wisconsin.

7. Venue is proper in this forum pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Venue is also proper pursuant to 28 U.S.C. §1391(c) because Defendants reside in this District.

## FACTS

**A.   The Property Insurance Policies and Casualty Losses**

8. Defendants sell property insurance coverage for, *inter alia*, homes and commercial buildings in approximately 25 states, specifically including Arizona, Illinois, Ohio, South Carolina, Utah, Virginia and Wisconsin.

9. This lawsuit only concerns property coverage for buildings and structures, and not personal contents, such as furniture and clothes.

10.     Further, this lawsuit only concerns claims wherein Defendants themselves accepted coverage and then Defendants themselves chose to calculate actual cash value exclusively pursuant to the replacement cost less depreciation methodology.

11.     The property insurance forms sold by Defendants in Arizona, Illinois, Ohio, South Carolina, Utah, Virginia and Wisconsin are materially identical as it relates to the contractual dispute set forth herein.

12.     The laws in Arizona, Illinois, Ohio, South Carolina, Utah, Virginia and Wisconsin are materially identical as it relates to the contractual dispute set forth herein, or at the least, any differences would be manageable in the class context. *See Steinberg v. Nationwide Mutual Insurance Co.*, 224 F.R.D. 67, 76 (E.D.N.Y. 2004) (involving a 46-state putative class claiming breach of standard form insurance contracts). Specifically, these states are "replacement cost less depreciation" states for purposes of determining actual cash value under property insurance policies, or preclude the depreciation of labor when the property insurers' policy forms do not expressly allow for the same by court decision, statute or state administrative agency in situations where the property insurer itself chooses to calculate actual cash value exclusively pursuant to the "replacement cost less depreciation" methodology.

13.     Pennington and Raines contracted with AFMICSI for an insurance policy providing coverage for certain losses to their house located at 481 23rd Street NW, Massillon, Ohio (the "Insured Pennington Property"). The policy number was 410482748369 (the "Pennington Policy").

14.     Pennington and Raines paid AFMICSI premiums in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

15. On or about March 29, 2020, the Insured Pennington Property suffered damage covered by the Pennington Policy. The damage to the Insured Property required replacement and/or repair.

16. Pennington and Raines timely submitted a claim to AFMICSI requesting payment for the covered loss.

17. AFMICSI determined the loss to the Insured Pennington Property was covered by the terms of the Pennington Policy.

18. AFMICSI calculates its actual cash value payment obligations to its policyholders for structural damage loss by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or "RCV"), and then AFMICSI subtracts the estimated depreciation.

19. The Pennington Policy, and the other property forms at issue in this pleading, do not permit the withholding of labor as depreciation as described below. In contrast with the Pennington Policy, certain policies of insurance expressly allow for the depreciation of "labor" as described herein. The type of form or endorsement will be referred to herein as a "labor depreciation permissive form." The Pennington Policy does not contain a labor depreciation permissive form.

20. The McCluskeys contracted with AFIC for an insurance policy providing coverage for certain losses to their house located at 1621 Timbertop Drive, Tallmadge, Ohio (the "Insured McCluskey Property"). The policy number was 34-BR6015-01 (the "McCluskey Policy").

21. The McCluskeys paid AFIC premiums in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

22. On or about April 8, 2020, the Insured McCluskey Property suffered damage covered by the McCluskey Policy. The damage to the Insured McCluskey Property required replacement and/or repair.

23. The McCluskeys timely submitted a claim to AFIC requesting payment for the covered loss.

24. AFIC determined the loss to the Insured McCluskey Property was covered by the terms of the McCluskey Policy.

25. AFIC calculates its actual cash value payment obligations to its policyholders for structural damage loss by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or "RCV"), and then AFIC subtracts the estimated depreciation.

26. The McCluskey Policy does not contain a labor depreciation permissive form.

**B.     Defendants' Calculation of Plaintiffs' ACV Payments**

27. In adjusting Pennington and Raines and the McCluskeys' respective claims, both AFMICSI and AFIC affirmatively and unilaterally chose to use a "replacement cost less depreciation" methodology to calculate each respective loss and to make its respective ACV payments. Neither Defendant used any other methodology to calculate Plaintiffs' respective ACV payments.

28. Soon after the March 29 and April 8, 2020 losses, AFMICSI and AFIC, respectively, sent adjusters to inspect the damage and estimate the ACV. AFMICSI and AFIC both use commercially-available computer software to estimate RCV, depreciation, and ACV. The software used to calculate the payment to each of the Plaintiffs is called Xactimate®.

29. As set forth in a written Xactimate® estimate provided to Pennington and Raines by AFMICSI and dated April 6, 2020, AFMICSI's adjuster determined that Pennington and Raines

5

had suffered a covered loss in the amount of $8,166.47 (the RCV) to their property. The estimate included the cost of materials and labor required to complete the repairs.

30. In calculating its ACV payment obligations to Pennington and Raines, AFMICSI subtracted from the RCV estimate the $1,000.00 deductible provided for in the policy plus an additional amount ($4,491.58) for depreciation. This resulted in a net ACV payment of $2,674.89. Pennington and Raines were underpaid on its ACV claim as more fully described below.

31. As set forth in a written Xactimate® estimate provided to the McCluskeys by AFIC and dated May 14, 2020, AFIC's adjuster determined that the McCluskeys had suffered a covered loss in the amount of $18,593.25 (the RCV) to their property. The estimate included the cost of materials and labor required to complete the repairs.

32. In calculating its ACV payment obligations to the McCluskeys, AFIC subtracted from the RCV estimate the $1,000.00 deductible provided for in the policy plus an additional amount ($14,951.55) for depreciation. This resulted in a net ACV payment of $859.31. The McCluskeys were underpaid on their ACV claim as more fully described below.

    **C.**    **Defendants Practice Of Withholding Labor As Depreciation**

33. When it calculated Plaintiffs' ACV benefits owed under the Pennington Policy and McCluskey Policy, each of the Defendants withheld costs for both the materials and labor required to repair or replace the buildings and structures as depreciation, even though labor does not depreciate in value over time. Defendants withheld labor costs throughout their ACV calculations as depreciation.

34. Like all property insurance claims estimating software, the specific commercial claims estimating software used by AFMICSI and AFIC allows for the depreciation of materials only or the depreciation of both material and labor in its depreciation option setting preferences.

35. In this pleading, whenever reference is made to withholding "labor" as depreciation, "labor" means intangible non-materials, specifically including both the labor costs and the laborers' equipment costs and contractors/laborers' overhead and profit necessary to restore property to its condition *status quo ante*, as well as removal costs to remove damaged property, under commercial claims estimating software.

36. AFMICSI and AFIC's withholding of labor costs as depreciation associated with the repair or replacement of Plaintiffs' respective properties resulted in Plaintiffs receiving payment for their respective losses in an amount less than they were entitled to receive under their respective policies. AFMICSI and AFIC breached their respective obligations under the Pennington Policy and the McCluskey Policy by improperly withholding the cost of labor as depreciation.

37. Plaintiffs themselves cannot determine the precise amount of labor that has been withheld based only upon the written estimate provided. To determine the precise amount of labor withheld, it is necessary to have access to the commercial property estimating program at issue (Xactimate®), as well as the electronic file associated with the estimate.

38. While a property insurer may lawfully depreciate material costs when calculating the amount of an ACV payment owed to an insured, it may not lawfully withhold repair labor as depreciation under the policy forms at issue in Arizona, Illinois, Ohio, South Carolina, Utah, Virginia and Wisconsin when using a replacement cost less depreciation methodology.

39. Defendants' failure to pay the full cost of the labor necessary to return Plaintiffs' structures to the *status quo ante* left Plaintiffs under-indemnified and underpaid for their respective losses.

40.     Plaintiffs dispute whether portions of the agreed-to and undisputed amounts of labor, as determined by Defendants themselves, may be withheld by Defendants as "depreciation" from Defendants' ACV payment under the terms and conditions of their respective insurance policies.

41.     Defendants materially breached their duty to indemnify Plaintiffs by withholding labor costs from ACV payment as depreciation, thereby paying less than Plaintiffs were entitled to receive under the terms of their respective policies, including but not limited to depriving Plaintiffs of the time use of money resulting from the time periods of labor withholdings in the form of prejudgment interest.

## AMOUNT IN CONTROVERSY

42.     Upon information and belief, the amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

43.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this lawsuit as a class action on behalf of themselves and on behalf of others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Only to the extent it is a requirement under applicable law, the proposed class herein is ascertainable.

44.     The proposed class that Plaintiffs seek to represent is tentatively defined as follows:

> All AFMICSI or AFIC policyholders (or their lawful assignees) who made: (1) a structural damage claim for property located in Arizona, Illinois, Ohio, South Carolina, Utah, Virginia and Wisconsin; and (2) for which AFMICSI or AFIC accepted coverage and then chose to calculate actual cash value exclusively pursuant to the replacement cost less depreciation methodology and not any other methodology, such as fair market value; and (3) which resulted in an actual cash value payment during the class period from which non-material depreciation was withheld from the policyholder; or which should have resulted in an actual cash

value payment but for the withholding of non-material depreciation causing the loss to drop below the applicable deductible, for the maximum limitations period as may be allowed by law and arguments of counsel.

In this definition, "non-material depreciation" means application of either the "depreciate removal," "depreciate non-material" and/or "depreciate O&P" option settings within Xactimate® software or similar depreciation option settings in competing commercial software programs.

The class excludes any claims for which the applicable limits of insurance was exhausted by the initial actual cash value payment.

The class also excludes any claims arising under labor depreciation permissive policy forms, *i.e.*, those forms and endorsements expressly permitting the "depreciation" of "labor" within the text of the policy form, unless the use of those forms violate the law of the respective states at issue.

45. Plaintiffs reserve the right to amend the definition of the proposed class through discovery. The following persons are expressly excluded from the class: (1) Defendants and their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff.

46. Plaintiffs and members of the putative class as defined all have Article III standing as all such persons and entities, at least initially, received lower claim payments than permitted under the policy. Certain amounts initially withheld as labor may be later repaid to some policyholders with replacement cost provisions in their policies, if any. However, policyholders who have been subsequently repaid for initially withheld labor still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, *i.e.*, statutory or common law prejudgment interest on the amounts improperly withheld, for the time period of withholding.

47. The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiffs reasonably believe that hundreds or thousands of people geographically dispersed across Arizona, Illinois, Ohio, South Carolina, Utah, Virginia and Wisconsin have been

9

damaged by Defendants' actions. The names and addresses of the members of the proposed class are readily identifiable through records maintained by Defendants or from information readily available to Defendants.

48. The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

49. Defendants have acted on grounds generally applicable to the proposed class in that Defendants have routinely withheld labor costs as described herein in its adjustment of property damage claims under its policies of insurance. It is reasonable to expect that Defendants will continue to withhold labor to reduce the amount they pay to their insureds under these policies absent this lawsuit.

50. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

    a. Whether Defendants' policy forms allow the withholding of labor costs in the calculation of ACV payments under the replacement cost less depreciation methodology;

    b. Whether Defendants' policy language is ambiguous;

    c. Whether Defendants' withholding of labor costs in the calculation of ACV payments breaches the Defendants' insurance policy forms;

    d. Whether Defendants have a custom and practice of withholding labor costs in the calculation of ACV payments;

   e.  Whether Plaintiffs and members of the proposed class have been damaged as a result of Defendants' withholding of labor costs in the calculation of ACV payments owed; and

   f.  Whether Plaintiffs and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act.

  51. Plaintiffs' claims are typical of the claims of the proposed class members, as they are all similarly affected by Defendants' customs and practices concerning the withholding of labor. Further, Plaintiffs' claims are typical of the claims of the proposed class members because Plaintiffs' claims arose from the same practices and course of conduct that give rise to the claims of the members of the proposed class and are based on the same factual and legal theories. Plaintiffs are not different in any material respect from any other member of the proposed class.

  52. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiffs' interests do not conflict with the interests of the proposed class they seek to represent. Plaintiffs have retained lawyers who are competent and experienced in class action and insurance litigation. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the members of the proposed class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the proposed class while recognizing the risks associated with litigation. Plaintiffs reserve the right to have unnamed class members join them in seeking to be a class representative.

  53. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed members of the proposed class in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims

is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

54. In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiffs and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

55. Questions of law or fact common to Plaintiffs and members of the proposed class, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amount due to many individual members of the proposed class is likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual members of the proposed class to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by Defendants' unlawful practices to effectively pursue recovery of the sums

owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

56. Class certification is further warranted because Defendants have acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

57. Plaintiffs may seek, in the alternative, certification of issues classes.

58. Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

## COUNT I - BREACH OF CONTRACT

59. Plaintiffs restate and incorporate by reference all preceding allegations.

60. Defendants entered into policies of insurance with Plaintiffs and members of the proposed class. These insurance policies govern the relationship between Defendants and Plaintiffs, and members of the proposed class, as well as the manner in which claims for covered losses are handled.

61. These policies of insurance are binding contracts under Arizona, Illinois, Ohio, South Carolina, Utah, Virginia and Wisconsin law, supported by valid consideration in the form of premium payments in exchange for insurance coverage.

62. Defendants drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation concerning the withholding of labor as depreciation from ACV payments for structural loss when Defendants are calculating ACV under a replacement cost less depreciation methodology.

13

63. In order to receive or be eligible to receive ACV claim payments in the first instance, Plaintiffs and the putative class members complied with all material provisions and performed all of their respective duties with regard to their insurance policy.

64. Defendants breached their respective contractual duties to pay Plaintiffs and members of the proposed class the ACV of their claims by unlawfully withholding labor costs as described herein.

65. Additionally, Defendants actions in breaching their contractual obligations to Plaintiffs and members of the proposed class benefitted and continue to benefit Defendants. Likewise, Defendants' actions damaged and continue to damage Plaintiffs and members of the proposed class.

66. Defendants actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiffs and members of the proposed class.

67. In light of the foregoing, Plaintiffs and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts unlawfully withheld from their ACV payments, including prejudgment interest as may be allowed by law.

## COUNT II - DECLARATORY JUDGMENT AND RELIEF

68. Plaintiffs restate and incorporate by reference all preceding allegations.

69. This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless of whether further relief is or could be claimed.

70. A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

71. Plaintiffs and members of the proposed class have all complied with all relevant conditions precedent in their contracts.

72. Plaintiffs seek, individually and on behalf of the proposed class, a declaration that Defendants' property insurance contracts prohibit the withholding of labor costs as described herein when adjusting losses under the methodology employed herein.

73. Plaintiffs further seeks, individually and on behalf of the proposed class, any and all other relief available under the law arising out of a favorable declaration.

74. Plaintiff and members of the proposed class have and will continue to suffer injuries.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully request that this Court:

1. Enter an order certifying this action as a class action, appointing Plaintiffs as the representative of the class, and appointing Plaintiffs' attorneys as counsel for the class;

2. Enter a declaratory judgment, declaring that Defendants' withholding of labor costs as depreciation is contrary to and breaches the insurance policy issued to Plaintiffs and members of the class;

3. Enter a declaration, and any preliminary and permanent injunction and equitable relief against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the policies, practices, customs, and usages complained of herein, as may be allowed by law;

4. Enter an order that Defendants specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of their past and present practices complained of herein;

5. Award compensatory damages for all sums withheld as labor costs under the policy, plus prejudgment interest on all such sums, to Plaintiffs and members of the proposed class;

6. Award compensatory damages to Plaintiffs for all amounts to which they are entitled;

7. Award costs, expenses, and disbursements incurred herein by Plaintiffs and members of the proposed class as may be allowed by law, including but not limited to amounts available under the common fund doctrine;

8. Pre- and Post-Judgment interest; and

9. Grant such further and additional relief as the Court deems necessary and proper.

Dated: November 2, 2020                    LARSON • KING, LLP

                                           By: s/David C. Linder
                                           30 E. 7th Street
                                           Suite 2800
                                           St. Paul, MN 55101
                                           Tel: (651) 312-6500
                                           dlinder@larsonking.com

                                           *Attorneys for Plaintiffs and*
                                           *Putative Class Representatives*